The opinion of the court was delivered by
Duncan, J.
It will be best to consider the offers made by the defendant below, as one connected chain of evidence, as he contends that they proved a series of circumstances and transactions which, in equity, would compel the obligees to proceed against the land, in the first instance, and not against him until that fund was exhausted.
*28 As to the alleged want of notice of this special matter, it was not made an objection below, when it was moved, and cannot now be made. Our courts of law have, by the instrumentality of a jury, long exercised chancery powers, on the plea of payment with leave, &c. This plea and notice enable the party to give evidence of any thing which would prove, that in equity and good conscience, the plaintiff was not entitled to recover. This has been a course pursued for more than sixty years. The notice is considered as in fact a bill in equity. Payment, with leave and notice, operate substantially as bills of injunction. The verdict of a jury may be, when the injunction would be perpetual, absolute and unconditional, and when it only would be temporary, or until a particular act was required to be done, conditional. This jurisdiction is the province of the court, as a matter now become the law of the land. The jury is the instrument by which it is to be exercised under the directions of the court. Minsker's Lessee v. Morrison, 2 Yeates, 346. Decamp v. Feay, 5 Serg. & Rawle, 323. But if the jury give an absolute verdict, the court say it is conditional, and withhold the execution. All the cases on the doctrine of principal and surety seem properly the subjects of equity jurisdiction; but the rules for the relief of a surety are said to be the same in both courts when the facts are the same. The People v. Jansen, 7 Johns. Rep. 332; and the question on the merits here would be, was this such a case, from the facts and circumstances offered in evidence, which we are to take it the plaintiffs in error could have proved, as would entitle the party to relief in equity, and what would be the nature of that relief? It will be proper first to state that by the Act of 2d of April, 1S04, 4 Sm. Laws, 138, authorizing the sale by administrators, the Orphans’ Court is required on motion of the purchasers, to confirm the sale and to deem the estate to be transferred to and vested in the purchaser, as fully as the intestate held the same at his decease, subject and liable lo the payment of the purchase money. The lien continues for the purchase money, and the purchaser takes it subject to that. The lands of the intestate remain in the hands of the purchaser, subject to the payment of these bonds, and the purchaser from Adam Hawk has retained the purchase money' for that purpose. In' every view, he stands in the situation of Adam Plawk, and has no peculiar equity. If the land was discharged of the lien, by the subsequent conveyance in 1S17, and actual receipt of the purchase money, this would discharge the surety; for a surety is entitled to every remedy, which the creditor has against the principal, to enforce every security and all means of payment, to stand in the place of the creditor, not only through the medium of the security, but even of securities taken without his knowledge. He has a right to have these securities transferred to him, and avail himself of them, though there was no stipulation for that purpose; and if the obligee renders any such security, which he took from the principal *29 debtor, void, this discharges the surety; for the very taking of that security by him, may have excited confidence in the security, and lulled him asleep, and deprived him of taking other security for his own eventual responsibility, until it was too late, and the rights of third persons had intervened; and therefore equity imposes an obligation on the creditor who takes the security, to take it fairly and lawfully, and to hold it impartially and justly; as for instance the security, by his very character and j’elation as security, has an intez-est that a mortgage taken from the principal debtor shall be dealt with in good faith, and held in truth, not only for the creditors’ security, but for the surety’s indemnity. This principle in equity will be found in Hayes v. Ward, 4 Johns. Ch. 130. But the lien hez’e is not can-celled, nor could it be by the administrators, unless the money had been actually paid. The receipt in the deed is not evidence which estops the party in interest from showing that it has not been paid; and here the evidence is, that it was not. The matter still turns *ound to this, — is the creditor compellable in equity to z’esort in the first instance, to that fund, under the circumstances of this case? If Michael Hawk, or his executors, had called on the administrators of Casper to proceed against the principal debtor, and they had refused, until he had become insolvent, no doubt this would discharge them. Now here, in 1819, the administrators of Casper gave notice to the puz’chaser from Adam, not to pay over the puz-chase money, as they intended to look to the land, for the payment of the money. On Michael Hawk’s death, no demand is made against his executors, and the administrators of Casper give notice that they mean to look to this natural fund. This would lull the exetors of Michael Hawk into securitj^, and prevent them from taking measures for their own security. But the administrators of Casper, had taken the proper measures by giving notice to the purchaser from Adam Hawk. This I think is a taking to the land, and equity would compel them to exhaust that fund, before they resorted to the security. The action brought against the land for the payment, shows a prosecution of such intention, and this subsequent to this action was a circumstance. As a general nzle, I do not lay it down, that the principal debtor is first to be sued. I do not think there is any such rule. In ordinary cases, the surety is liable in the first instance, though the creditor may have taken security from the principal debtor, and the surety is left to resort to the principal debtor for his indemnity, after he has paid the defendant, and is clothed, by substitution, with all the rights and securities of the creditor; but, under all tire circumstances offered to be proved, I think he had a right to call upon the creditor here, to exhaust that fund which he can make available, and which the surety cannot; to resort to it in the first instance.
This is one of those strong cases, in which the creditor, in equity, and gpod conscience, is compellable to resort to that fund before he pursues the surety personally. It is more strong than the case *30 of Hayes v. Ward, where the creditor had a bond and mortgage, taken in New Jersey, where all the parties resided, as a security for a note endorsed by the plaintiff transferred to the creditor, on a usurious loan. Instead of resorting to the mortgage or principal debtor, he sued the plaintiff while in New York, as indorser, and chancery granted an injunction to stay the suit at law, until the" creditor had pursued his remedy on the mortgage. This is, in this case, such a plain principle of natural equity, that it would seem to require no authority to support it; but the authorities referred to by Chancellor Kent, go all the length. The right of the surety does not stand on any express contract, but on the same principles of natural justice, upon which one surety is called upon to contribute to another. The relation both of creditor on the one part, and principal debtor and surety on the other, was fully proved, and coeval with and existed at the time the lien was created by loan on the land, and the parties to this suit are entitled to all the rights, and bound by all the duties of that relation. Michael Hawk entered into this bond, knowing that the obligor held the land subject to the payment of the purchase money, and therefore would conclude he would encounter little risk, as it was worth more than the amount of his obligation.
This view of the subject disposes of the whole case; as well on the bills of exceptions to the rejection of evidence, as the charge of the court. The facts should be ascertained by the jury, and therefore they should have been received in evidence. In the rejection of these facts and circumstances, there was error. But the question with me is, whether there should, if the jury fodnd these facts, have been a verdict for the defendant below, or a conditional one for the plaintiff. I think it would be more in conformity to our notions of equity, and the mode of effecting it, on a trial by jury, to have instructed the jury to find for the plaintiffs, conditioned, that all further proceedings should stay, until the plaintiffs below authorized the defendant to proceed'against the fund at his cost; and if that fund turned out defective, then to proceed by execution .on the judgment in this action. This, in effect, would enjoin until the creditors had done what they ought to have done, in the first instance, resorted to the remedy, of which they had given notice, and which they knew was ready for them, and retained for their use.
This record presents nothing of any third person, having any equity to interfere between the creditors and the surety. If there be any such superior equities to that of the surety, they.may be let in on the new trial. They do not appear on the record. The judgment is reversed, and a venire de novo avoided.